**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BLUEFIELD DIVISION**

**DONNA WARD,**

      **Plaintiff,**

**vs.**                                                    **CIVIL ACTION NO. 1:21-CV-00194**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

      **Defendant.**

<u>**PROPOSED FINDINGS AND RECOMMENDATION**</u>

This is an action seeking review of the final decision of the Acting Commissioner of Social Security denying the Plaintiff's applications for Disability Insurance Benefits (DIB) under Title II and for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By Order entered April 2, 2021 (ECF No. 3), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are Plaintiff's Motion for Judgment on the Pleadings (ECF No. 15), Plaintiff's Memorandum in Support of Judgment on the Pleadings (ECF No. 16), Defendant's Brief in Support of Defendant's Decision (ECF No. 19), as well as Defendant's Amended Brief in Support of Defendant's Decision (ECF No. 20).

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** Plaintiff's motion (ECF No. 15), **GRANT** Defendant's request to affirm the decision of the Commissioner (ECF

1

Case 1:21-cv-00194    Document 21    Filed 11/01/21    Page 2 of 21 PageID #: 843

Nos. 19, 20); **AFFIRM** the final decision of the Commissioner; and **DISMISS** this action from the docket of the Court for the reasons stated *infra*.

**Procedural History**

The Plaintiff, Donna Ward (hereinafter referred to as "Claimant"), protectively filed her applications for Titles II and XVI benefits on November 15, 2018, alleging that her disability began September 1, 2018 due to follicular lymphoma, stage 4, anxiety, depression, a learning disability and memory loss.[1] (Tr. at 21, 272) Her claims were initially denied on March 19, 2019 (Tr. at 138-142, 143-147) and again on May 29, 2019 upon reconsideration (Tr. at 155-161, 162-168). Thereafter, Claimant filed a written request for hearing on June 3, 2019 (Tr. at 169-170).

An administrative hearing was held on February 25, 2020 before the Honorable Regina L. Warren, Administrative Law Judge ("ALJ") (Tr. at 40-72), and on April 1, 2020, the ALJ entered an unfavorable decision (Tr. at 18-39). On May 14, 2020, Claimant sought review by the Appeals Council of the ALJ's decision (Tr. at 228-230). The ALJ's decision became a final decision on December 22, 2020 when the Appeals Council denied Claimant's Request (Tr. at 7-12).

On March 30, 2021, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2) The Defendant, (hereinafter referred to as "Commissioner") filed an Answer and a Transcript of the Administrative Proceedings. (ECF Nos. 12, 13) Subsequently, Claimant filed a Motion for Judgment on the Pleadings and a Memorandum in Support of Judgment on the Pleadings (ECF Nos. 15, 16); in response, the Commissioner filed a Brief and an Amended Brief in Support of Defendant's

---

[1] In her application for benefits, Claimant alleged she is currently working, but only two days per week since September 1, 2018 (Tr. at 265, 272, 291, 298).

Decision (ECF Nos. 19, 20). Consequently, this matter is fully briefed and ready for resolution.

**Claimant's Background**

Claimant was 54 years old as of the alleged onset date, considered a person closely approaching advanced age, and during the underlying proceedings, changed age categories to a person of advanced age. See 20 C.F.R. §§ 404.1563(d)-(e), 416.963(d)-(e). (Tr. at 33) Claimant has a high school education, and attended special education since the first grade (Tr. at 46). She had worked as a housekeeper for about twenty-five years, and more recently worked as a dietary aide at a nursing home (Tr. at 48, 291). Claimant discontinued working during the first six months of her treatment for lymphoma, and although she returned to work full time after completing her treatment, she had to reduce her hours to part-time, working only two days a week until she could no longer work at all in October 2019 (Tr. at 44-45, 49-50, 54-56).

**Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant filing for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from

a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. §§ 404.1520(f), 416.920(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. Id. §§ 404.1520(g), 416.920(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a), 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment.

Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in Sections 404.1520a(c) and 416.920a(c). Those Sections provide as follows:

4

(c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.

(2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. See 12.00E of the Listings of Impairments in appendix 1 to this subpart.

(4) When we rate the degree of limitation in the first three functional areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following five-point scale: None, mild, moderate, marked, and extreme. The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. Id. §§ 404.1520a(d)(1), 416.920a(d)(1).

Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. Id. §§ 404.1520a(d)(2), 416.920a(d)(2).

Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity. Id. §§ 404.1520a(d)(3), 416.920a(d)(3). The Regulations further specify how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

Id. §§ 404.1520a(e)(4), 416.920a(e)(4).

**Summary of ALJ's Decision**

In this particular case, the ALJ determined that Claimant met the requirements for insured worker status through December 31, 2023. (Tr. at 23, Finding No. 1) Moreover, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since the alleged onset date of September 1, 2018. (Id., Finding No. 2) Under the second inquiry, the ALJ found that Claimant had the following severe impairments: follicular lymphoma stage 4 and depression. (Tr. at 24, Finding No. 3)

At the third inquiry, the ALJ concluded Claimant's impairments did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id., Finding No. 4) The ALJ then found that Claimant had the residual functional capacity ("RFC") to perform medium work except:

[S]he can perform detailed, uninvolved work in a stable environment. She can lift

6

and carry 50 pounds occasionally and 25 pounds frequently. She can stand and walk for 6 hours. She is unlimited with sitting. She cannot climb ladders. She can frequently crouch, crawl, stoop, kneel, balance and climb ramps and stairs. She can frequently reac in all directions with her bilateral upper extremities. She has gross feeling bilaterally. She should avoid concentrate[d] exposure to extreme cold, vibrations, unprotected heights and hazards. She can function in a work environment requiring little independent decision making. She requires a low stress work stable environment. She can have less than occasional interaction with the public. She can be around co-workers and supervisors in proximity. She should not be assigned any complicated tasks. She can perform SVP 1 and SVP 2 work assignments without supervision. She can concentrate, persist and pace for 2-hour periods within normal breaks and periods allotted in a standard work-day. She can tolerate occasional routine workplace changes.

(Tr. at 25-26, Finding No. 5)

At step four, the ALJ found Claimant is capable of performing her past relevant work as a housekeeper. (Tr. at 32, Finding No. 6) Nevertheless, the ALJ made an alternative step five finding, and determined that based on her age, education, work history, and RFC, as well as noting that the transferability of job skills was immaterial, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Claimant could perform. (Tr. at 32-34) Finally, the ALJ determined Claimant had not been under a disability from September 1, 2018 through the date of the decision. (Tr. at 34, Finding No. 7)

**Claimant's Challenges to the Commissioner's Decision**

Claimant asserts that the ALJ failed to consider Claimant's carpal tunnel syndrome, which she testified caused her to drop things, despite the underlying medical records documenting treatment for this condition and what impact that would have on the RFC assessment. (ECF No. 16 at 6-7) Additionally, Claimant argues the ALJ failed to acknowledge any of Claimant's non-severe impairments, despite the medical evidence documenting same, which further undermines the substantial evidence supporting the decision. (Id. at 8-9) Claimant asks this Court to reverse

the decision for an award of benefits, or to remand this case to correct the errors below. (Id. at 10)

In response, the Commissioner argues that the ALJ addressed Claimant's carpal tunnel syndrome symptoms in the RFC assessment. (ECF No. 19 at 8)[2] Because the ALJ's analysis went beyond step two, is not obligated to mention every piece of evidence in the decision, and still addressed Claimant's nonsevere impairments throughout the decision, there is no error. (Id. at 9-10) The Commissioner further asserts that while the ALJ did not discuss Claimant's diagnoses of carpal tunnel syndrome, degenerative disc disease, facet arthropathy, generalized anxiety disorder, borderline intellectual functioning, and depression, the ALJ did address Claimant's allegations of symptoms and pain related to these impairments, considered the medical records and treatment concerning same, as well as Claimant's self-described activities. (Id. at 10-13) Finally, the Commissioner argues that should the Court find the ALJ's decision was not supported by substantial evidence, the appropriate remedy is remand, not reversal. (Id. at 13) The Commissioner states the final decision is based on substantial evidence and asks this Court to affirm. (Id. at 14)

**The Relevant Evidence of Record**[3]

The undersigned has considered all evidence of record, including the medical evidence, pertaining to Claimant's arguments and discusses it below.

Evidence Related to Physical Impairments:

Prior to the relevant period, Claimant was diagnosed with follicular lymphoma in 2017

---

[2] Although the Commissioner filed an Amended Brief in Support of Defendant's Decision (ECF No. 20), the differences between the first Brief and the Amended Brief are very slight and the arguments contained in both do not vary substantially necessitating the Court to provide an additional summary, as that exercise would be duplicative. Therefore, for purposes of this Proposed Findings and Recommendation, the undersigned focuses on the first Brief filed by the Commissioner.

[3] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings.

(Tr. at 373, 672). She underwent successful surgery and chemotherapy prior to her alleged onset date and was in remission during the relevant period (Tr. at 671, 541). Additionally, Claimant was diagnosed with carpal tunnel syndrome prior to the relevant period (Tr. at 400, 571). As a residual effect of her lymphoma, she reported numbness and tingling in her legs and feet (Tr. at 438). However, she maintained normal gait and reported symptom relief with Neurontin (Tr. at 438, 441-442).

During the relevant period, Claimant's primary care records show that she had normal clinical signs, including normal gait and stance (Tr. at 391, 395, 397-398). Additionally, while imaging from before her alleged onset date showed minimal to mild degenerative changes in her lumbar and thoracic spine, her condition was managed with pain medication (Tr. at 398, 490, 492). She reported improvement in her leg pain and back pain with medication and she denied any issues with walking (Tr. at 578). Her clinical signs during her examinations were largely normal (Tr. at 579, 717, 720).

Claimant's lymphoma remained in remission during the relevant period, and she underwent maintenance treatment with Rituxan (Tr. at 541). Her clinical signs were normal during her oncology appointments, and it was noted that her "[f]unctional status is 100%" (Tr. at 547-547, 565, 568, 700-703). She completed her maintenance treatment in October 2019, remained in complete remission, and was "doing very well" in 2020 (Tr. at 700, 728-729, 746).

Claimant attended an internal medicine consultative examination in March 2019 (Tr. at 610). She had normal gait, and she appeared comfortable while sitting during the examination (Tr. 612). She had some pain with range of motion in her right shoulder, neck, back, and hips (Id.). She had normal range of motion in her hands, and she was able to make a fist and pick up coins

without difficulty (Id.). Although she showed some decreased signs of grip strength using a dynamometer, when she performed this examination using the examiner's hands, she had full grip strength (Id.). Plaintiff had no signs of pain or swelling in her legs, and she was diagnosed with osteoarthritis, lymphoma, and chronic cervical and lumbar strain (Tr. at 613-614).

    Evidence Related to Mental Impairments:

    Claimant has a history of mental health treatment for depression prior to the relevant period (Tr. at 411). During these examinations she exhibited normal speech, thought content, cognition, orientation, memory, attention, and sociability with varied moods and fair insight and judgment (Tr. at 418-419). Prior to her alleged onset date, Claimant attended an evaluation where she obtained low IQ scores that were considered invalid (Tr. at 384). At the time, she reported working thirty hours per week as a dishwasher, shopping, and spending time with her family and boyfriend (Tr. at 382-383, 385). She was prescribed an antidepressant, which she took prior to and during the relevant period (Tr. at 419).

    During the relevant period, Claimant had limited mental health treatment. As part of her disability application, Claimant attended a consultative examination in early 2019. At this examination, she complained of decreased sleep, but she also reported drinking up to twelve cups of coffee per day (Tr. at 603). During this examination she reported being unable to complete tasks or activities of daily living but continued to work part-time as a kitchen worker (Tr. at 604). She demonstrated normal thought processes, thought content, perception, judgment, immediate memory, recent memory, and remote memory (Id.). She made one error on her serial three test for concentration, and she had a depressed mood (Tr. at 605-606). While she obtained low IQ scores during her testing, the examiner found these results were invalid (Tr. at 606). She was diagnosed

with major depressive disorder, generalized anxiety disorder, and borderline intellectual functioning (Id.).

For the remainder of the relevant period, Claimant had limited treatment for her mental impairments. While she reported varied moods and anxiety, she also reported that she was working at a nursing home, and her objective signs were largely normal (Tr. at 555-556). She was scheduled for appointments every three months, and she reported that her hobby was "babysitting her granddaughter" (Tr. at 557-558). Claimant's clinical signs were generally unremarkable during the relevant period except for varied moods (Tr. at 711, 751-753).

**The Administrative Hearing**

Claimant Testimony:

Claimant testified that she lives with her daughter who does "most" of the cooking and cleaning around the house as well as the grocery shopping because Claimant does not like to be in public. (Tr. at 47) Claimant stated that she will do a little bit of laundry if she feels like it, though she has pain in her legs, muscles and joints that prevent her from doing this all day long. (Tr. at 47-48)

Claimant testified that although her lymphoma is in remission, she still feels the effects from her chemotherapy treatment, including pain, which she described as annoying and distracting, as well as memory loss. (Tr. at 53) When she cut back to working only two days a per week, on weekends, she struggled because standing on her feet and legs hurt. (Tr. at 55) After working two days, Claimant stated that she would stay in bed for a couple of days afterwards. (Tr. at 56) She quit her job in October 2019 because her memory got worse and she was afraid that she might give a resident the wrong food or drink. (Id.)

Claimant testified that she would be unable to return to work full time because in addition to her memory, depression and anxiety, she would have trouble being on her legs all day, and that her back gives her trouble, too. (Tr. at 57) She admitted she "don't go to the doctor", though her back has bothered her for a "long time." (Id.) She also endorsed being unable to stand longer than five minutes or sit longer than ten minutes before having pain. (Tr. at 57-58) She does not sleep well because her legs and feet hurt. (Tr. at 59)

She described having "the dropsies" as a result of her carpal tunnel syndrome, and has dropped dishes when she was working. (Tr. at 59-60)

Vocational Expert ("VE") Testimony:

The VE characterized Claimant's past relevant work as a light housekeeper/custodian as being light as actually performed, and unskilled, and the dietary aide position as being medium and unskilled. (Tr. at 62-63) The ALJ asked the VE to assume an individual with Claimant's age, education and work experience with the controlling RFC, *supra*. (Tr. at 63-64) The VE responded that someone with Claimant's vocational profile and RFC could not perform past relevant work as a dietary aid because that job necessarily is working with the public, but could perform past relevant work as a housekeeping cleaner, as it could be performed in relative isolation depending upon the facility. (Tr. at 64) The VE testified further that the individual could perform other medium jobs, including a linen room attendant, laundry worker/laborer, and produce packer, which are also unskilled. (Tr. at 65) The VE stated that if the individual were limited to being capable of only occasionally lifting up to twenty pounds and frequently lifting up to ten pounds, the housekeeping cleaner position would still remain, both as Claimant actually performed the job and as customarily performed. (Tr. at 66)

In response to questioning from Claimant's representative, the VE testified that if the hypothetical individual were limited to occasional fingering, the housekeeper cleaner job would be eliminated as well as the other jobs she identified as light and medium level work. (Tr. at 70) The VE further stated that the jobs she identified contemplated the individual being able to stand for six out of an eight-hour workday, and that if the individual were unable to meet that requirement, the individual could not perform the past work as a housekeeper cleaner or any of the jobs identified. (Tr. at 70-71)

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists,

the Court must affirm the Commissioner's decision "even should the court disagree with such decision." Blalock, 483 F.2d at 775.

**Analysis**

The RFC assessment represents the *most* that an individual can do despite his imitations or restrictions. See SSR 96-8p, 1996 WL 3744184, at *1 (emphasis in original). As argued by Claimant, the Regulations provide that an ALJ must consider all relevant evidence as well as consider a claimant's ability to meet the physical, mental, sensory and other demands of any job – this includes evidence related to both severe and nonsevere impairments; this assessment is used for the basis for determining the particular types of work a claimant may be able to do despite his impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). The RFC determination is an issue reserved to the Commissioner. See Id. §§ 404.1527(d), 416.927(d).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physician's opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

As noted by Claimant and the Commissioner, at step two, the ALJ does not mention Claimant's diagnoses of carpal tunnel syndrome, degenerative disc changes of the thoracic spine, degenerative disc changes and facet arthropathy in the lumbar spine, generalized anxiety disorder or borderline intellectual functioning.[4] However, the ALJ found other severe physical

---

[4] The mere diagnosis of an impairment is not enough to prove disability. Thompson v. Astrue, 442 F. App'x 804, 808 (4th Cir. 2011). Claimant must demonstrate "a showing of related functional loss" and the impairment must also not "be reasonably controlled by medication or treatment[.]" See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986).

impairments, follicular lymphoma stage 4 and depression, and it is known that there is no reversible error when an ALJ finds "only one severe impairment when there is substantial evidence of other impairments in the record, so long as the ALJ considers the combined effect of all the claimant's impairments later in the sequential evaluation process." See <u>Lauver v. Astrue</u>, No. 2:08-cv-87, 2010 WL 1404767, at *4 (N.D.W. Va. Mar. 31, 2010).

For instance, at the third step, the ALJ explicitly discussed Claimant's limitations from her mental impairments: the ALJ acknowledged Claimant's testimony that her memory is poor, and that she stated in her applications for benefits that she needed reminders for taking her medications and that she was unable to pay bills, count change, handle a savings account or use a checkbook or money orders. (Tr. at 24, 286)[5] The ALJ noted that during a mental status examination in December 2019, Claimant's recent memory was poor, but her remote memory was grossly intact, but on other occasions, both recent and remote memories were good. (Tr. at 24, 753, 555, 605) Additionally, Claimant was found to be full oriented in all spheres (Tr. at 24, 555, 604, 753), and that she indicated she needed no reminders to take care of her personal hygiene and grooming (Tr. at 24, 285). The ALJ also recognized that on mental status examination, Claimant exhibited a "depressed/anxious mood" (Tr. at 24, 604, 753). Despite on "one occasion" the examiner noted Claimant's eye contact was poor, that she kept her head down, and characterized her speech as "mumbling" Claimant was found to be understandable, on another occasion, Claimant's speech was normal, with intact comprehension (Tr. at 24-25, 607, 752, 753). The ALJ also noted that Claimant reported having regular contact with her family members and able to go to the pharmacy

---

[5] Claimant indicated that she has her daughter help with the checking account because of her "learning disability", as she is unable to "read or write well enough." (Tr. at 286)

15

and grocery store (Tr. at 25, 607). Regarding her ability to concentrate, the ALJ noted that Claimant was found to be impaired "on one occasion" having made an error attempting serial 3s, and that the results of her IQ testing were deemed invalid due to her persistence and pace (Tr. at 25, 605, 606). However, the ALJ also noted that Claimant was found to be fully oriented, with logical and coherent thought process, and that her mental status exam in December 2019 her attention was found to be grossly intact (Tr. at 25, 555, 605); Claimant is also able to drive a car, do some housework and prepare some meals (Tr. at 25, 285, 286).

Indeed, in the ALJ's analysis for Claimant's RFC assessment, the ALJ again revisited Claimant's alleged limitations from her mental impairments, again recounting her allegations that she is unable to work because of her "memory completing tasks, concentration, following instructions and getting along with others", and compared Claimant's alleged limitations with the medical evidence of record, including treatment for her mental health problems[6], her activities, as well as the opinion evidence of record.  (Tr. at 26-31)

While not explicitly mentioning carpal tunnel syndrome, or Claimant's treating provider for this impairment by name, Tahir I. Rana, M.D., it is clear that the ALJ considered the evidence from this medical source: "Since the alleged onset date of disability, claimant has received treatment with her physiatrist (9F, 14F, 24F) . . . ." (Tr. at 27, 430-458, 570-601, 715-721)[7] In

---

[6] Significantly, the ALJ noted that despite the mental health records "do show that claimant [had] some abnormal mental health status examination findings, including that claimant had poor energy, a depressed/anxious mood, fair insight, some limitation with her concentration, and psychomotor agitation[]", Claimant "is prescribed only one medication, Lexapro." (Tr. at 30)

[7] Claimant correctly points out that the ALJ misidentified Dr. Rana as a "physiatrist", as Dr. Rana's treatment records state that he is "Diplomate American Board of Psychiatry and Neurology" (see, e.g., Tr. at 430, 431). It is notable, however, that the record shows that the majority of Dr. Rana's treatment notes predate Claimant's alleged onset date and are duplicative.

16

addition to Claimant's other physical impairments, in the ALJ's analysis for the RFC assessment, she acknowledged that "Claimant reported problems with constant joint pain in her hands, wrists . . ." (Tr. at 27), and observed that on physical examination on March 7, 2019, Claimant's

> elbows and wrists were nontender. There was no redness, warmth or swelling or nodules. Examination of claimant's hands revealed no tenderness, redness, warmth or swelling. There was no atrophy and the claimant was able to make a fist bilaterally. The claimant was able to write and pick up coins with either hand without difficulty. Grip strength was equal to 5/5.

(Tr. at 28, 612) The ALJ also noted that physical examination results from October and December 2018, October 2019 and January 2020 were largely normal, with no evidence of motor or sensory deficits in both the upper or lower extremities. (Tr. at 28-29, 541, 542, 565, 568, 700, 746)

Indeed, regarding Claimant's other alleged physical impairments, it is clear that the ALJ not only recognized Claimant's alleged limitations in lifting, squatting, bending, standing, walking, sitting, kneeling, and stair climbing prevented her from working (Tr. at 26, 27), the ALJ also discussed these alleged limitations against the overall record of evidence. For example, from the March 7, 2019 examination, the ALJ noted that Claimant ambulated with a normal gait that was not unsteady, lurching or unpredictable; she did not use a handheld assistive device; and she appeared stable at station and comfortable in the supine and sitting positions. (Tr. at 27, 612) Though the ALJ noted that Claimant had pain with range of motion testing in her right shoulder only, and that there was crepitus in both shoulders, there was no tenderness noted. (Tr. at 28, 612) The ALJ further noted that examination of Claimant's lower extremities were unremarkable: there was no evidence of calf tenderness, redness, warmth, cord sign or Homan's sign; straight leg raise testing in sitting and supine position was normal; Claimant could stand on one leg at a time without difficulty; there was no hip joint tenderness, redness, warmth, swelling or crepitus; there was 5/5

17

muscle strength bilaterally (including Claimant's upper extremities); though Claimant seemed unable to walk on her heels or on tiptoes, she was able to perform tandem gait. (Tr. at 28, 613) It was noted that Claimant was unable to squat due to back pain and left calf pain. (Id.) It was noted that Claimant complained of back pain with range of motion testing of her hips and lumbar spine. (Id.) Claimant's cervical spine revealed no tenderness or muscle spasm, though range of motion testing caused neck pain. (Tr. at 28, 614) The ALJ observed that Claimant's physical examinations in October and December 2018, October 2019 and January 2020, which again reported unremarkable findings. (Tr. at 28-29, 541, 542, 565, 568, 700, 746) Again, the ALJ addressed these objective medical findings with the other evidence of record, noting that Claimant could prepare some meals, do some housework and laundry, go to the pharmacy, grocery store, and drive a car. (Tr. at 27, 285-286, 607)[8]

This Circuit and District have recognized " 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision[.]' " Reid v. Commissioner of Social Sec., 769 F.3d 861, 865 (4th Cir. 2014) (quoting Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2006) (per curiam)); see also Goad v. Astrue, No. 06-00870, 2008 WL 644881, at *1 (S.D.W. Va. Mar. 7, 2008); Nisbet v. Colvin, No. 13-33047, 2015 WL 893010, at *17 (S.D.W. Va. Mar. 2, 2015); Bays v. Colvin, No. 14-1564, 2005 WL 769784, at *21 (S.D.W. Va. Feb. 23, 2015). Moreover, " 'an ALJ's failure to cite specific evidence does not indicate that it was not considered.' " See Monroe v. Colvin, 826 F.3d 176 (4th Cir. 2016) (quoting Craig v. Apfel, 212 F.3d 433, 436

---

[8] The ALJ also considered the prior administrative findings of the state agency physicians, which discussed Claimant's carpal tunnel syndrome and degenerative disc disease, and found that Claimant remained capable of medium exertion work with certain postural and environmental limitations, however, neither physician assessed Claimant with any manipulative limitations (Tr. at 31-32, 83-85, 98-100, 114-116, 129-131).

(8th Cir. 2000)). As noted *supra*, while the ALJ may not have specifically mentioned Claimant's nonsevere impairments or diagnoses, such as carpal tunnel syndrome, she explicitly stated that she considered all the evidence of record when assessing Claimant's RFC. (See Tr. at 22, 26 ("After careful consideration of all the evidence . . ."")); (see also Tr. at 23, 25 ("After a careful consideration of the entire record . . .")) Having so stated, this Court should "take her at her word." See Reid, 769 at 865 ("The Commissioner, through the ALJ and Appeals Council, stated that the whole record was considered, and, absent evidence to the contrary, we take her at her word."); see also Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005) ("[O]ur general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter."); Christina W. v. Saul, Case No. 4:19-cv- 00028-PK, 2019 WL 6344269, *4 (D. Utah Nov. 27, 2019).

In sum, the ALJ's consideration of the evidence as it related to Claimant's alleged carpal tunnel syndrome and other nonsevere physical and mental impairments went well beyond the second step in the sequential evaluation process, therefore, the undersigned **FINDS** the ALJ's failure to explicitly mention these impairments is without error. From the undersigned's review of the ALJ's discussion of the evidence as it related to Claimant's carpal tunnel syndrome, in addition to the other alleged symptomology related to both her physical and mental impairments, severe and nonsevere alike, it is clear that the ALJ considered all the evidence, and ultimately determined Claimant's resulting limitations did not have a significant impact on her overall functioning precluding all work-related activities. In short, the ALJ has discharged her duty under the Regulations and pertinent legal authority and has provided an adequate explanation for her

conclusions that allows for meaningful review. See <u>DeLoatche v. Heckler</u>, 715 F.2d 148, 150 (4th Cir. 1983).

Accordingly, the undersigned **FINDS** the ALJ's assessment of Claimant's nonsevere impairments is supported by substantial evidence. Finally, the undersigned **FINDS** that the decision finding Claimant was not disabled is supported by substantial evidence.

## <u>Recommendations for Disposition</u>

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Claimant's request for reversal or remand (ECF No. 15), **GRANT** the Defendant's request to affirm the decision (ECF Nos. 19, 20), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.

Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Faber, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: November 1, 2021.



Omar J. Aboulhosn
United States Magistrate Judge